UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK E. PETERS,<br><br>    Plaintiff,<br><br>v.<br><br>NORRIS HOLLIE, et al.,<br><br>    Defendants. | Case No. 1:18-cv-01230-LJO-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED, WITH LEAVE TO AMEND<br><br>(ECF NO. 67)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

**I.    BACKGROUND**

Frank E. Peters ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under <u>Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) ("Bivens"). This case now proceeds on Plaintiff's first amended complaint, which was filed on March 22, 2018. (ECF No. 64.)

On April 13, 2018, Defendants[1] filed a motion to dismiss the first amended complaint on the ground that Plaintiff cannot bring a <u>Bivens</u> claim against defendants who are private contractors in a private prison that houses federal inmates. (ECF No. 67.) On May 25, 2018, Plaintiff filed an opposition to the motion to dismiss. (ECF No. 71.) Defendants' motion to dismiss is now before the Court.

According to Supreme Court case law, a plaintiff may not assert a <u>Bivens</u> claim against

---

[1] On May 4, 2018, Plaintiff dismissed defendants Conrad M. Graber, Warden of Terminal Island; Mahesh B. Patel, M.D.; and Evelyn G. Castro, M.D. (the Terminal Island Federal Correctional Institution defendants) from this action. (ECF No. 69.) The remaining defendants are Norris Hollie, M.D.; Burnet T. Rucker, M.D.; Stephanie Hicks, R.N.; and Craig Apker, Warden (the Taft Correctional Institution defendants). (ECF No. 64.)

employees of a privately operated federal prison because he or she has adequate protection in the form of state tort law against such private contractors. Accordingly, the Court will recommend that Defendants' motion to dismiss be granted with respect to Plaintiff's Eighth Amendment claims, while giving Plaintiff leave to amend to assert the state tort law claims that may be available.

## II.  PROCEDURAL HISTORY

Plaintiff first filed this case in the Central District of California. Plaintiff alleged that Defendants violated his rights under the Eighth Amendment by showing deliberate indifference to his medical needs related to his hand, shoulder, and knee, causing unnecessary and wanton infliction of pain. (ECF No. 1.)

On February 27, 2018, Magistrate Judge Shashi H. Kewalramani of the Central District of California granted Defendants' motion to dismiss Plaintiff's original complaint on the ground that Plaintiff failed to state a claim against Defendants. (ECF No. 59.) The Court held that Plaintiff did not plead more than a mere disagreement with the Doctors' chosen course of treatment. Id. at 11. Additionally, Plaintiff failed to allege that the Doctors had access to adequate resources to properly treat Plaintiff's condition but chose inadequate resources. Id. The Court determined that, based on Plaintiff's allegations, the CIPRO prescribed by Dr. Hollie may have caused Plaintiff's shoulder pain, but did not amount to more than negligence. Id. at 12. Lastly, the delay in receiving an MRI may have caused Plaintiff further injury, however, delay alone does not amount to a constitutional violation. Id. at 12-13. The Court held that Plaintiff failed to allege any facts that the Doctors were personally involved in delaying Plaintiff's treatment. Id. at 13. At most, Plaintiff allegations amounted to negligence. Id. at 12. Additionally, the Court held that Plaintiff failed to allege any facts that Nurse Hicks was involved in or directly caused Plaintiff's deprivations of medical care. Id. at 14. Further, the Court held that Plaintiff failed to sufficiently allege that Warden Apker personally participated in Plaintiff's alleged constitutional deprivations. Id at 13. The Court gave Plaintiff leave to amend. Id. at 15.

On May 4, 2018, Plaintiff dismissed defendants Conrad M. Graber, warden of Terminal

Island; Mahesh B. Patel, M.D.; and Evelyn G. Castro, M.D. from this action. (ECF No. 69)

On September 7, 2018, Judge Kewalramani found that venue no longer lied in the Central District and transferred this case to the Eastern District of California. (ECF No. 72.)

### III. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff filed his first amended complaint on March 22, 2018. (ECF No. 64.) Plaintiff claims that Defendants violated his rights under the Eighth Amendment by being deliberately indifferent to his medical needs related to his hand, shoulder, and knee, causing unnecessary and wanton pain. Id. at 6. Plaintiff alleges that he suffered a knee injury on or about January 30, 2014, and a shoulder/hand injury on or about March 1, 2014, while incarcerated at Taft Correctional Institution ("Taft"). Plaintiff alleges that Defendants cooperated in transferring Plaintiff to Federal Correctional Institution Terminal Island to avoid treating him. Additionally, the unnecessary and wanton infliction of pain constituted over three years of torture and resulted in Plaintiff's injuries becoming acute, chronic and disabling. The allegations against each defendant are as follows.

#### A. Norris Hollie, M.D.

Plaintiff alleges he sustained a knee injury after stepping into a faultily constructed section of sidewalk at Taft. Id. at 6.

Plaintiff first visited Dr. Hollie on March 27, 2014, and on that date Dr. Hollie said that Plaintiff's x-rays revealed no bone or soft tissue damage. Id. at 7. Dr. Hollie refused to order an MRI or offer a treatment plan. Id. at 7. Plaintiff saw Dr. Hollie again on March 20, 2014, and on May 30, 2014. Id. at 7. Plaintiff explained to Dr. Hollie that he was in a constant state of extreme pain, and Dr. Hollie agreed that Plaintiff's knee was still swollen, but no treatment plan was offered. Id. at 7. On or around June 1, 2014, Dr. Hollie refused to discuss Plaintiff's knee and shoulder/hand issue. Id. at 7.

#### B. Burnet T. Rucker, M.D.

Plaintiff alleges that on or about May 30, 2014, Plaintiff discussed with Dr. Rucker that his shoulder/hand was the most important medical issue and that he was in constant pain and sleep was impossible. Id. at. 8. Plaintiff explained to Dr. Rucker that he had a knee/hip issue.

3

1 | Id. at. 8. Dr. Rucker did not assign a diagnosis, treatment, or a testing plan. Id. at. 8.

On June 25, 2014, Plaintiff explained the seriousness of the pain but did not receive a response. Id. at. 8.

On July 15, 2014, Plaintiff's appointments with Dr. Rucker were cancelled. Id. at. 8. On July 25, 2014, Dr. Rucker opined that the ailment was Reflexive Sympathetic Dystrophy. Id. at. 8. Plaintiff disputed this possibility, and it was dropped. Id. at. 8.

On August 4, 2014, Plaintiff explained to Dr. Rucker that he could not lie in bed, could not raise his arms, and had no grip strength. Id. at. 8. Dr. Rucker assigned Plaintiff to the isolation ward and began a course of steroids. Id. at. 8. Plaintiff saw Dr. Rucker almost daily while in the isolation ward. Id. at. 8. Plaintiff alleges no other treatment or steroids had an impact, and Dr. Rucker said CIPRO was the cause but the issue was now chronic and there was no solution. Id. at. 8. Plaintiff learned that CIPRO can cause ruptured tendons, and alleges that Dr. Rucker was aware that ruptured tendons were the cause. Id. at. 8. On September 3, 2014, Dr. Rucker refused to discuss Plaintiff's condition any further. Id. at. 8

On September 4, 2014, Plaintiff saw Dr. Rucker at the medical facility and Dr. Rucker again refused to discuss Plaintiff's medical issues. Id. at 9. Plaintiff asked what he could do to get something started, and Dr. Rucker stared at Plaintiff with an angry look and said "just keep doing what he was doing and see what happens." Id. at 9. This incident took place during the time Plaintiff had notified the warden, the Region, and the general counsel's office that he was being denied medical care. Id. at 9. Plaintiff asked if there was a plan to address his medical needs, and Dr. Rucker replied, "[o]h yea, there's a plan all right." Id. at 9. Plaintiff was prevented from seeing another doctor. Id. at 9.

### C. Stephanie Hicks, R.N.

On July 15, 2014, Plaintiff alleges that Nurse Hicks was interviewing inmates who requested to see a doctor but said she was too busy to see Plaintiff. Id. at 9. On September 8, 2014, Nurse Hicks told Plaintiff that it seemed that he was getting a lot of medical attention. Id. at 9. Plaintiff replied that it may seem like it, but really no diagnosis or treatment was available. Id. at 9. On September 24, 2014, Nurse Hicks examined Plaintiff but said she was

not able to schedule a doctor's appointment. Id. at 9.

### D. Craig Apker, Warden at Taft Correctional Institution

Plaintiff alleges that Warden Apker transferred Plaintiff to Terminal Island in retaliation for Plaintiff's complaints.

On or around July 2014, Plaintiff asked Warden Apker for help receiving medical attention for his knee and shoulder/hand problems. Id. at 10. Warden Apker told Plaintiff that he had been monitoring all transports to physicians in Bakersfield because he was monitoring the expense items incurred, which was a major concern at Taft. Id. at 10. Warden Apker also told Plaintiff that he would look into Plaintiff's medical issues. Id. at 10.

The next conversation Plaintiff had with Warden Apker was when Plaintiff was transferred to Terminal Island. Id. at 10. Plaintiff objected to the transfer, but Warden Apker advised Plaintiff that he might be happier at another facility. Id. at 10. When Plaintiff returned to Taft in 2016, Warden Apker told Plaintiff that he would not be receiving surgery while at Taft. Id. at 10.

### IV. DISCUSSION

#### a. Defendants' Motion to Dismiss

Defendants contend that Plaintiff's first amended complaint should be dismissed because Plaintiff cannot bring Bivens claims against a private company.[2] (ECF No. 67 at 7.) Defendants also argue that Plaintiff failed to cure the defects of his original complaint by merely omitting key factual allegations to make it appear that Defendants ignored his medical conditions and Plaintiff did not receive treatment. Id. Additionally, Defendants claim that Plaintiff's allegations selectively omit or contradict allegations in his original complaint. Id.

#### b. Legal Standard for Motions to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts

---

[2] Defendants also stated in the introduction that Plaintiff's complaint was untimely (ECF No. 67 at 7.), but they fail to make any further argument or present facts regarding this issue.

5

in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. See Iqbal, 556 U.S. at 679. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236 (1974).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001).

### c. Deliberate Indifference to Serious Medical Needs

#### i. Legal Standard

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

Deliberate "indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison [officials] provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). However, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

    ii. <u>Plaintiff Fails to Sufficiently Allege a Claim for Deliberate Indifference to Serious Medical Needs Against Dr. Hollie and Dr. Rucker ("the Doctors")</u>

In the first amended complaint, Plaintiff claims that, around September 2014, Dr. Rucker refused to discuss the knee and shoulder/hand issue and Plaintiff was prevented from seeing another doctor. (ECF No. 64.) However, in Plaintiff's original complaint he alleged

that Dr. Rucker ordered an MRI for Plaintiff and scheduled an appointment for a consultation with an outside neurologist. (ECF No. 1 at 5-6.) A few weeks later, Plaintiff was transferred to Terminal Island. Id. at 6. Plaintiff alleged in his original complaint that Dr. Hollie placed him on a 28 day CIPRO medication and when the treatment was over Plaintiff notified the medical department that he was experiencing intense pain. (ECF No. 1 at 4.) Plaintiff further states that for several months he underwent many tests and began seeing Dr. Rucker. Id. at 4.

Plaintiff's first amended complaint alleges he did not promptly receive the type of medical treatment he requested. However, the timeline of events provided in Plaintiff's original complaint contradicts the allegations in his first amended complaint. It appears that Plaintiff was seen by both Doctors over a period of time.[3]

Accordingly, Plaintiff's allegations against the Doctors are insufficient to state a claim for violation of the Eighth Amendment.

                iii. <u>Plaintiff Sufficiently Alleges a Claim for Deliberate Indifference to Serious Medical Needs Against Nurse Hicks, to the Extent that the Claim is Available to Plaintiff</u>

In the original complaint, Plaintiff failed to allege any facts concerning Nurse Hicks' involvement or knowledge of Plaintiff's medical issues.

In the first amended complaint, Plaintiff alleges that Nurse Hicks was the gate keeper at Taft's medical service department and was responsible for scheduling inmates to be seen by Dr. Hollie and Dr. Rucker. (ECF No. 64 at 3.) During July 2014 through December 2014, Plaintiff alleges Nurse Hicks prevented him from seeing a doctor. On July 15, 2014, Nurse Hicks said she was too busy to deal with Plaintiff and on this same day his appointment with Dr. Rucker was cancelled. Id. at 8-9. On July 25, 2014, Plaintiff was seen by Dr. Rucker and on August 4,

---

[3] The Court may look to prior pleadings in determining the plausibility of an amended complaint. Rodriguez v. Sony Comput. Entm't Am., LLC, 801 F.3d 1045, 1054 (9th Cir. 2015) ("An amended complaint should aver additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint."); Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (courts are not required "to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

2014, Plaintiff was assigned treatment by Dr. Rucker. Id. at 8. On September 3, 2014, Plaintiff alleges Dr. Rucker refused to discuss Plaintiff's medical needs with him and on September 8, 2014, Nurse Hicks told Plaintiff it seemed like he was getting a lot of medical attention. Id. at 9. On September 24, 2014, Nurse Hicks examined Plaintiff's hand and agreed it was swollen but said she was not able to schedule a doctor's appointment for Plaintiff. Id. at 9. However, in the original complaint, Plaintiff alleged he was seen by a neurologist in December. This appointment was scheduled by Dr. Rucker. (ECF No. 1 at 5-6.)

Indifference to a prisoner's medical needs may appear when prison officials deny, delay, or intentionally interfere with medical treatment. Lemire, 726 F.3d at 1081. Plaintiff may have sufficiently alleged that Nurse Hicks knew Plaintiff had a serious medical need, but interfered with or delayed his medical treatment by refusing to allow Plaintiff to see a doctor when requested. Plaintiff has alleged that on at least two occasions Nurse Hicks denied Plaintiff medical attention even though she was aware that Plaintiff was in need of medical treatment.

Construing the pleading liberally, as the Court must at this stage, these allegations set forth a viable claim under the Eighth Amendment for deliberate indifference to serious medical needs against Nurse Hicks, to the extent such a claim is available to Plaintiff.

      iv. <u>Plaintiff Sufficiently Alleges a Claim for Deliberate Indifference to Serious Medical Needs Against Warden Apker, to the Extent that the Claim is Available to Plaintiff</u>

In Plaintiff's first amended complaint, Plaintiff claims Warden Apker transferred Plaintiff to Terminal Island because of Plaintiff's complaints about his medical treatment, and upon return to Taft, Warden Apker told Plaintiff he would not be receiving surgery while at Taft. Indifference to Plaintiff's medical needs may appear when a prison official denies, delays, or intentionally interferes with medical treatment. Lemire, 726 F.3d at 1081.

Construing the pleading liberally, as the Court must at this stage, these allegations set forth a viable claim under the Eighth Amendment for deliberate indifference to serious medical needs as to Warden Apker, to the extent such a claim is available to Plaintiff.

### d. <u>Bivens</u> Claims by Inmates Housed in Private Facilities

The Court now turns to whether Plaintiff may assert such Eighth Amendment claims, given that the institution is privately operated.

A <u>Bivens</u> action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. <u>Hartman v. Moore</u>, 547 U.S. 250 (2006). The basis of a <u>Bivens</u> action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. <u>Baiser v. Department of Justice, Office of U.S. Trustee</u>, 327 F.3d 903, 909 (9th Cir. 2003). "To state a claim for relief under *Bivens*, a plaintiff must allege that a federal officer deprived him of his constitutional rights." <u>Serra v. Lappin</u>, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing <u>Schearz v. United States</u>, 234 F.3d 428, 432 (9th Cir. 2000). A <u>Bivens</u> claim is only available against officers in their individual capacities. <u>Morgan v. U.S.</u>, 323 F.3d 776, 780 n.3 (9th Cir. 2003); <u>Vaccaro v. Dobre</u>, 81 F.3d 854, 857 (9th Cir. 1996). "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under *Bivens*." <u>O'Neal v. Eu</u>, 866 F.2d 314, 314 (9th Cir. 1988).

#### i. The Parties' Arguments and Judicial Notice

Plaintiff asserts that defendants are liable under the Eighth Amendment of the United States Constitution, citing <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).

Defendants claim that Plaintiff cannot bring a <u>Bivens</u> action against Defendants because the Defendants are employed by a private entity, Management and Training Corporation, and are not agents of the federal government. (ECF No. 67 at 11.)

Defendants request the Court take judicial notice of two cases, <u>Edison v United States of America</u>, et al, 822 F.3d 510 (9th Cir. 2016) and <u>Valdez v. Benov</u>, 715 F. App'x 611 (9th Cir. 2017), which show that "Taft is a BOP facility operated by Management Training Corporation, a private prison company." (ECF No. 67 at 12). Plaintiff did not object to Defendants' request.

Under Federal Rule of Evidence 201, the Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned." Fed. R. Evid. 201(b). "Judicial notice of such facts is mandatory when requested by a party who has supplied the information to the court." Fed. R. Evid. 201(c)(2).

The Court takes judicial notice of the fact that Taft is a BOP facility operated by Management Training Corporation, a private prison company.

### ii. Analysis

In <u>Correctional Services Corporation v. Malesko</u>, 534 U.S. 61 (2001), the U.S. Supreme Court considered whether <u>Bivens</u> actions should be extended to allow private corporations housing federal inmates. Malesko, a former inmate, sued petitioner halfway house operator for negligence. <u>Id</u>. at 63-64. Malesko suffered from a heart condition that limited his ability to engage in physical activity, such as climbing the stairs. <u>Id.</u> at 64. At the halfway house, Malesko was assigned a room on the 5th floor. <u>Id.</u> A year after his arrival, Petitioner initiated a policy requiring inmates who lived below the 6th floor to use the staircase rather than the elevator. <u>Id.</u> Malesko was exempt due to his health condition, however, on one occasion an employee of the halfway house forced Malesko to use the staircase. <u>Id.</u> Malesko suffered a heart attack, fell and was injured. <u>Id.</u>

The Court held <u>Bivens</u> should not be extended to Eighth Amendment medical claims by federal prisoners in private facilities because such prisoners have access to tort remedies that are unavailable to federal prisoners housed in Bureau of Prisons facilities. <u>Id</u>. at 71-73. The Court stated that it was conceded at oral argument that alternative remedies were just as great as any remedy under <u>Bivens</u>. <u>Id</u>. at 73. "Federal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in government facilities." <u>Id</u>. at 73-74. The Court further stated that the "heightened deliberate indifference standard of the Eighth Amendment would make it considerably more difficult for respondent to prevail than on a theory of ordinary negligence." <u>Id</u>. at 73-74.

Eleven years later in <u>Minneci v. Pollar</u>. 565 U.S. 118 (2012), the U.S. Supreme Court considered whether a <u>Bivens</u> action based on the Eighth Amendment was available against employees of a privately operated federal prison. Plaintiff was a prisoner at a federal facility

operated by a private company and filed an Eighth Amendment claim against the prison medical staff. Id. at 118. The Court held that a person cannot assert an Eighth Amendment Bivens claim based on insufficient medical treatment against employees of a private prison. Id. at 131. The Court noted that a Bivens action will not succeed when there is an existing alternative process that provides adequate protection. Id. at 118, 120-121 (citing Wilkie v. Robbins, 551 U.S. 537, 550 (2007)). In California, state tort law provides for ordinary negligence actions, based upon "want of ordinary care or skill" for actions of "negligent failure to diagnose or treat," and for actions based on failure of persons with a custodial duty to protect others from "unreasonable risk of physical harm." Minneci 565 U.S. at 128 (citing Cal. Civ. Code §§ 1714(a), 1714.8(a)). The Supreme Court recognized that California courts have specifically applied this law to jailers, including private operators of prisons. Minneci 565 U.S. at 128. Additionally, the Court noted that California's state tort law reflects general principles of all state tort laws. Minneci 565 U.S. at 128 (citing Restatement (Second) of Torts §§314A(4), 320 (1963-1964)). Such state law imposes general tort duties of reasonable care, including medical care, on prison employees in every state of privately managed federal facilities. Id. at 128.

In this case, Plaintiff attempts to bring a Bivens action against defendants who are employees of Management and Training Corporation, a private company. As there are state tort laws that provide adequate remedies against employees of private prisons, the Court will dismiss this federal action based on the Eighth Amendment. However, the Court recommends giving Plaintiff leave to amend to assert state tort claims against defendants, to the extent he can do so.

**V.     CONCLUSION AND RECOMMENDATIONS**

Because Plaintiff's Bivens claim for violation of the Eighth Amendment against employees of a private prison cannot proceed due to adequate remedies under state tort law, this Court recommends dismissing Plaintiff's Eighth Amendment claims with prejudice. However, the Court also recommends granting Plaintiff leave to amend to assert state tort claims.

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss be GRANTED IN PART.
2. Plaintiff's federal claims based on the Eighth Amendment be DISMISSED, with prejudice.
3. Plaintiff be granted leave to amend to assert state tort claims.

These findings and recommendations will be submitted to the United States district court judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **twenty-one (21) days** after being served with a copy of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **seven (7) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 9, 2019**                    /s/ Erica P. Grosjean
                                              UNITED STATES MAGISTRATE JUDGE